# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **SENECA ONE FINANCE, INC.,** | * | |
| Plaintiff, | * | |
| v. | * | Case No. RWT 16-cv-1848 |
| **KRIS BLOSHUK** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

On June 3, 2016, Seneca One Finance, Inc. filed a Complaint in the Circuit Court for Montgomery County, Maryland against former employee Kris Bloshuk. Seneca One alleged that Ms. Bloshuk breached the non-competition and non-solicitation provisions of her employment contract, and that she engaged in a civil conspiracy with her new employer, DRB Capital, to breach Ms. Bloshuk's contract with and fiduciary duties to Seneca One. ECF No. 2. Seneca One also sought an accounting from Ms. Bloshuk for monies unjustly received as a result of her alleged breach. *Id.* Ms. Bloshuk removed the case to this Court on June 3, 2016, ECF No. 1, and on June 10, 2016 filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 12. A Motions Hearing was held on August 10, 2016. ECF No. 20. For the reasons that follow, Ms. Bloshuk's Motion to Dismiss will be granted.

## FACTS

### I. Seneca One's Business

Seneca One engages in what it describes as the "highly competitive business of receivable factoring and financing, including financial services and solutions for recipients of deferred payments." ECF No. 2 ¶ 6. Put simply, its principal activity is to purchase for a lump

sum all or a portion of structured settlement annuities or other deferred payment plans.[1] Seneca One identifies structured settlement annuitants or recipients of other deferred payments and alleged that it then works with these individuals with a goal toward finalizing the purchase of the structured settlement payments. *Id.* ¶ 7. After Seneca One closes a deal with a customer, it alleged that it "commits significant resources to ensure that the customer's experience is a positive one," including bearing the costs to obtain court approval of the transaction and advancing large sums of money to the customer prior to obtaining court approval. *Id.* ¶ 17. It is through these efforts, Seneca One alleged, that Seneca One "builds goodwill with customers and enables Seneca One representatives to build on that goodwill and establish relationships with customers." *Id.* The names of these annuitants are usually a matter of public record, and Seneca One allegedly engages in this business throughout the United States. *See id.* ¶ 6; ECF No. 15, at 4 ("the names of structured settlement annuitants are in the public record.").

## II. Ms. Bloshuk's Employment History

In September 2013, Ms. Bloshuk began working at Seneca One as an "Annuity Specialist." ECF No. 2 ¶ 18. Annuity Specialists "manage day-to-day relationships with structured settlement annuitants," and create and build relationships with customers and prospective customers. *Id.* ¶ 12. To do so, they "monitor and manage customer information that is kept in Seneca One's proprietary customer database." *Id.* The names of structured settlement

---

[1] The business of structured settlement purchasing has been the subject of much public discussion in recent years, including a report by the Washington Post on companies in the business of purchasing structured settlements from vulnerable victims of lead poisoning. *See* Terrence McCoy, *How companies make millions off lead-poisoned, poor blacks*, THE WASHINGTON POST (August 25, 2015), https://www.washingtonpost.com/local/social-issues/how-companies-make-millions-off-lead-poisoned-poor-blacks/2015/08/25/7460c1de-0d8c-11e5-9726-49d6fa26a8c6_story.html?tid=a_inl. Indeed, exploitation by structured settlement purchasers prompted the Maryland Judiciary's Standing Committee on Rules of Practice and Procedure to propose the adoption of procedural rules for judicial approval of settlements. The revised rules, later adopted by the Court of Appeals of Maryland effective January 1, 2016, require a proposed transferee of structured settlement benefits to file a detailed petition for court approval, and require the payee to file a consent to the petition and an affidavit from an independent professional advisor. Md. Rules 15-1302-1304. The court must then conduct a hearing attended by the payee, the guardian or representative of the payee where applicable, the independent professional advisor, and the petitioner or a duly authorized representative. Md. Rule 15-1305.

annuitants are usually in the public record, but Seneca One alleged that Annuity Specialists often become "privy to private information" of customers and potential customers. *Id.* ¶ 14. Ms. Bloshuk was promoted to the position of Purchasing Manager in March 2015. In this position, she continued to carry out the responsibilities of an Annuity Specialist while also managing other Annuity Specialists. *Id.* ¶ 19.

As a condition of her employment, Ms. Bloshuk signed the "Seneca One Finance, Inc. Confidentiality, Non-Solicitation, and Non-Competition Agreement" ("the Contract"), discussed in further detail below, pursuant to which she agreed that she would neither compete against Seneca One nor contact or solicit any potential or existing customer of Seneca One during her employment and for one year thereafter. ECF No. 2 ¶ 21-22.

On January 7, 2016, Ms. Bloshuk resigned from her employment with Seneca One and immediately began working for DRB Capital ("DRB"), one of Seneca One's competitors. ECF No. 2 ¶ 24-25. Seneca One alleged that in early January 2016, prior to her resignation, Ms. Bloshuk "agreed to accept employment with DRB." It further alleged that, "on information and belief, at about this time," Ms. Bloshuk diverted or, at minimum, "discouraged," a potential customer of Seneca One, Theresa Serna, from engaging in a transaction offered by Seneca One in favor of offers made by DRB. *Id.* ¶ 27. "Soon after joining DRB," Ms. Bloshuk assisted in soliciting Ms. Serna on behalf of DRB. *Id.* Seneca One further alleged that while she was still employed at the company, Ms. Bloshuk "leveraged Seneca One's goodwill" to establish a relationship with another structured settlement annuitant, Anna Donahue, and then solicited Ms. Donahue after joining DRB. *Id.* ¶ 28.

Ms. Bloshuk moved to dismiss the Complaint pursuant to Rule 12(b)(6), arguing that the non-competition and non-solicit provisions are facially overbroad and unenforceable, and that

even if the non-solicit provision is enforceable, Seneca One failed to state a claim that she was in breach. ECF No. 12-1. She moved to dismiss Seneca One's claim for an accounting on the grounds that (1) she is not the sole possessor of the records containing the information sought, (2) Seneca One has not alleged that she has a duty to render an accounting, and (3) Seneca One improperly alleged an entitlement to money damages rather than just financial information. *Id.* at 15. Last, Ms. Bloshuk argued that Seneca One's civil conspiracy claim should be dismissed because Seneca One did not allege any agreement between her and DRB, and because she and DRB are not capable of committing the underlying torts. *Id.* at 18.

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court has further articulated the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. To survive a motion to dismiss, a complaint must put forth "plausible claim[s] for relief." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

**I.    The Non-Competition and Non-Solicitation Provisions are Facially Overbroad and Unenforceable.**

In Maryland, a restrictive employment covenant will only be enforced if it meets four requirements: "(1) the employer must have a legally protected interest, (2) the restrictive

4

covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy." *Medispec, Ltd. v. Chouinard*, 133 F. Supp.3d 771, 773-74 (D. Md. 2015) (quoting *Deutsche Post Global Mail, Ltd v. Conrad*, 116 Fed. App'x 435, 438 (4th Cir. 2004) ("*DPGM II*")). In assessing the reasonableness of a particular restrictive covenant, the court must first make a determination "on the scope of each particular covenant itself." *Medispec, Ltd.*, 133 F. Supp.3d at 774 (quoting *DPGM II*, 116 Fed. App'x at 438). If the covenant is not overbroad on its face, "the facts and circumstances of each case must be examined." *Id.* at 774-75.

It is well established that employers have a legally protected interest in "preventing departing employees from taking with them the customer goodwill they helped to create for the employer." *DPGM II*, 116 Fed. App'x at 438; *see also Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515 (Md. 1990) ("*Holloway II*") ("Persons in business have a protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers.") (citations omitted). A restrictive covenant is overbroad if it exceeds the limits of what is reasonably necessary to protect the employer's legally protected interest. *See DPGM II*, 116 Fed. App'x at 438. Because this Court finds that both the non-competition and non-solicitation provisions are not reasonably necessary to protect Seneca One's legally protected interest, and are thus facially overbroad and unenforceable, Seneca One is not entitled to relief based on Ms. Bloshuk's alleged ongoing violations of the Contract. For the reasons that follow, Count I of the Complaint will be dismissed.

### A. The Non-Competition Provision

The non-competition provision provides:

> While [employee is] employed by Seneca One and for 12 months after the termination of [her] employment for any reason, [she] will not directly or indirectly, for [herself] or on behalf of any other person or entity, engage or attempt to engage in the same or similar Business as Seneca One in any of the markets in which Seneca One has provided products or services or formulated a plan to provide products or services during the last 12 months of [her] employment with Seneca One.

ECF No. 2-2, at 5. The Contract excludes lines or parts of business of entities that are "wholly unrelated to Seneca One's Business and do not compete with Seneca One." *Id.*

#### 1. The Non-Competition Provision Is Not Reasonably Necessary to Protect the Goodwill Ms. Bloshuk Created with Customers.

The provision at issue prohibits Ms. Bloshuk from engaging, directly *or indirectly*, in the same *or similar* business as Seneca One's. Such a sweeping nationwide restriction cannot be enforced. This provision is not limited to the work that Ms. Bloshuk performed at Seneca One and is far wider in scope than is reasonably necessary to protect the goodwill that Ms. Bloshuk may have created with Seneca One customers.

In *MCS Services, Inc. v. Jones*, Civ. A. No. WMN-10-1042, 2010 WL 3895380, at *4 (D. Md. Oct. 1, 2010), Judge Nickerson of this Court granted a motion to dismiss the plaintiff's breach of contract claims on the grounds that the non-competition agreement, substantially similar to the one at issue here, was facially overbroad. The non-competition agreement in *MCS Services* prohibited the employee, for one year following the end of employment and in "any geographic area where the Company does business," from "directly or indirectly" owning, managing, operating, joining, being employed by, controlling, or participating in "any other entity engaged in a business in competition with, or similar in nature to, the Company's Business." *Id.* at *3. The Court found that while the duration and geographic scope were

reasonable, "the scope of the proscribed activity [was] not properly bounded" because it "prohibit[ed] [the defendant] from working in any capacity with any company that competes or may compete in any way with MCS." *Id.* As a result, the covenant was "not reasonably necessary to protect the customer goodwill [the defendant] created, and it [was] not narrowly tailored to that end." Rather, it "constrain[ed] the list of [the defendant's] potential employers instead of targeting possible goodwill-thieving activities." *Id.* Like in *MCS Services*, the provision at issue here is not reasonably necessary to protect any goodwill that Ms. Bloshuk created with customers and serves only to limit her potential employers.

*RLM Communications, Inc. v. Tuschen*, No. 14-2351, 2016 WL 4039679 (4th Cir. Jul. 28, 2016), while interpreting North Carolina law, is also useful to this analysis. In *RLM Communications*, the Fourth Circuit found overbroad a non-competition provision that prohibited the former employee from "directly or indirectly participat[ing] in a business that is similar to a business now or later operated by Employer in the same geographical area." *Id.* at *3. The court found this restriction "largely unmoored from RLM's legitimate business interests," explaining that "[i]nstead of focusing on employment that raises the risk that Tuschen will use knowledge obtained from RLM to RLM's detriment, the Noncompete targets the similarity of a new employer to RLM. That is not a sufficient limiting factor for a covenant not to compete." *Id.* at *3-4. The non-compete provision at issue here likewise targets only the similarity of any future employers to Seneca One, without targeting future employment that would enable Ms. Bloshuk to use any contact she had with actual customers to Seneca One's detriment.

The non-competition provision in the Contract is designed more to prevent former employees from working for any competitor of Seneca One than to prevent the employees from

taking advantage of customer goodwill created while employed at Seneca One. This is not a legally protected interest. *See DPGM II*, 116 Fed. App'x at 438 (restrictive covenant was unenforceable because it "seem[ed] designed to prevent any kind of competition by [the former employees], which is not a legally protected interest under Maryland law"); *Medispec, Ltd. v. Chouinard*, 133 F. Supp.3d 771, 775 (D. Md. 2015) (noncompetition provision was facially overbroad because it "would broadly prohibit Defendant from being employed by, engaging with, or being connected to, either directly or indirectly, any direct or indirect competitor of Medispec"); *Holloway II*, 572 A.2d at 515 (noting that courts have held that restraint is not justified if the harm "consists merely in the fact that the former employee becomes a more efficient competitor").

Seneca One also claims that the broad scope of the non-competition provision is necessary to protect its Confidential Information. However, the Contract already has a separate provision addressing the employee's confidentiality obligations, so the non-competition provision is unnecessary for the protection of this interest. *See* ECF No. 2-2, at 2. Because the provision is not reasonably necessary to protect the goodwill that Ms. Bloshuk created with customers or Seneca One's Confidential Information, the provision is facially overbroad.

### 2. The Non-Competition Provision is Overbroad in Geographic Scope.

The non-competition provision of the Contract does not include a specific geographic scope. Rather, it prohibits employees from "engag[ing] or attempt[ing] to engage in the same or similar Business as Seneca One in *any of the markets in which Seneca One has provided products or services* or formulated a plan to provide products or services during the last 12 months" of employment with Seneca One. ECF No. 2-2, at 5 (emphasis added). Seneca One

averred in its Complaint, and its counsel confirmed at oral argument, that Seneca One engages in its business "throughout the United States." ECF No. 2 ¶ 6.

Seneca One argues that if it operates its business nationwide, a nationwide geographic restriction is reasonable. But based on the language of the provision, which prohibits engaging in the "same or similar Business as Seneca One" in "any of the markets" in which Seneca One operates, Plaintiff's construction of the provision would effectively bar Ms. Bloshuk from the industry nationwide. Any attempt to enforce a non-competition provision that prohibits a former employee from pursuing her chosen career anywhere in the country is legally troublesome, at best.

Courts interpreting Maryland law have at times found non-competition provisions lacking a geographic limitation to be reasonable. But these provisions have generally been more narrowly tailored as to the scope of activities prohibited. Unlike here, where the employee is completely prohibited from working in the "same or similar Business" as Seneca One, the provisions found reasonable were generally narrowly tailored to prohibit employment only with direct competitors doing the same type of work that the employee did for the former employer. *See, e.g.*, *PADCO Advisors, Inc. v. Ohmdal*, 179 F. Supp.2d 600, 607 (D. Md. 2002) (lack of geographic limitation was reasonable because covenant was "drafted to limit employment only at the two competing mutual fund companies which market the same type of funds that PADCO does" and it was "more reasonable to aim the covenant not to compete at two firms, rather than to limit employment to a geographic area, when the only real threat of competition [was] posed by those two specific firms."); *Allegis Group, Inc. v. Jordan*, Civ. A. No. GLR-12-2535, 2014 WL 2612604, at *6 (D. Md. Jun. 10, 2014) (lack of bounded geographic scope in noncompetition provision was not unreasonable in part because the scope of prohibited activity was limited to

businesses "in which employee performed work"); *Intelus Corp. v. Barton*, 7 F. Supp.2d 635, 641-42 (D. Md. 1998) (lack of geographic scope was reasonable when company operated business nationwide and scope of restriction was limited to "those businesses that compete directly for the customers and accounts of Intelus"). The provision at issue contains no narrow tailoring as to the scope of restricted activities to make the nationwide scope of the covenant reasonable.[2]

### B. The Non-Solicitation Provision

The non-solicitation provision in the Contract provides, in relevant part, that the employee will not, during her employment and for twelve months thereafter, directly or indirectly

> solicit or assist others to solicit business from any of Seneca One's Customers (i) with whom [she] dealt or had direct contact at any time during [her] employment; (ii) from whom [she] solicited business or deals, directly or indirectly at any time during [her] employment; or (iii) about whom, even without direct contact, [she] received Confidential Information while employed during the last 24 months of [her] employment with Seneca One. [She] also will not induce or attempt to induce any of Seneca One's Customers set forth in parts (i) through (iii) of the Subparagraph to cease or refrain from conducting Business with Seneca One, or to conduct the same or similar Business with any other person or entity.

ECF No. 2-2 at 4. Seneca One defines "Customers" as "all individuals, firms or entities that have either borrowed money from or sold periodic payments to Seneca One, or have been in contact with Seneca One (whether that contact was initiated by Seneca One or the individual) for the purpose of borrowing money from or selling periodic payments to Seneca One." *Id.* at 1. Importantly, the Contract explicitly states that the individual need not have closed a deal or

---

[2] Seneca One claims that its non-competition provision is narrower than ones previously held unreasonably broad, because it prohibits Ms. Bloshuk from working "only in markets in which Seneca One has actually provided or planned to provide products or services during the last 12 months of her employment." ECF No. 15, at 21. But Seneca One's Complaint alleges that it conducts its business "throughout the United States," a point that counsel for Seneca One confirmed at the hearing on the present motion. It is hard to see how this is more circumscribed than the non-competition provisions without geographic limitations.

entered into an agreement with Seneca One in order to be considered a customer; in other words, "potential customers are included in the definition of 'Customer.'" *Id.*

The ordinary definition of the word "customer" contemplates that the individual has already entered into an agreement with the business to buy goods or services. *See, e.g.*, *Customer*, Black's Law Dictionary (10th Ed. 2014) ("buyer or purchaser of goods or services"). Seneca One has identified no authority that would support a right to protection of potential customers, and its inclusion of all individuals who have "been in contact with Seneca One" in its definition of "Customers" is breathtaking in scope. This, combined with the fact that the non-solicitation provision also prohibits Ms. Bloshuk from soliciting business even from individuals with whom she had no direct contact (thus eliminating any concerns regarding potential competitive advantage), makes the non-solicit provision of the Contract facially overbroad. *See Holloway v. Faw, Casson & Co.*, 552 A.2d 1311, 1319 (Md. Ct. Spec. App. 1989) ("*Holloway I*"), *rev'd in part on other grounds*, 572 A.2d 510 (Md. 1990) (court found unreasonable the portion of an employment agreement that restricted former employee "from engaging *any* former clients of the firm, regardless of whether [employee] himself actually dealt with those clients during his employment with Faw, Casson").

Seneca One claims that this provision is necessary to prevent misappropriation of confidential information, because the Annuity Specialists begin building a database of potential customer information from the moment that Seneca One and the individual are first in contact. Even ignoring the fact that there is another provision in the Contract dealing with confidential information, this provision is far broader than necessary to protect this interest.

Seneca One includes "customer identity" in its definition of Confidential Information. ECF No. 2-2 at 1. But the names of structured settlement annuitants, as Seneca One

acknowledges, are usually a matter of public record. *See* ECF No. 2 ¶ 14; ECF No. 15, at 4. This means that, if at any point during the last two years of her employment with Seneca One, Ms. Bloshuk happened to learn just the name of a structured settlement annuitant from a Seneca One database—information she could, in most cases, ascertain from public records—she would be prohibited from contacting that person at her new position. Such a sweeping restriction cannot be enforced.

Moreover, Seneca One has not alleged that Ms. Bloshuk used anything other than the potential customers' names to identify and approach them for possible business with DRB. There is no allegation in the Complaint,[3] besides the bare assertion that Ms. Bloshuk "leveraged Seneca One's goodwill to establish a relationship with another structured settlement annuitant," that she misappropriated any of Seneca One's confidential information. ECF No. 2 ¶ 27-28. And even if the assertion that Ms. Bloshuk "leveraged Seneca One's goodwill" was sufficient to state a claim, Seneca One misstates the legally protected interest. The interest protectable by a non-compete provision is the goodwill that the *employee* creates with the customer while working for the employer. This guards against the risk that the customer will be loyal to the employee with whom he has a relationship, rather than the relatively impersonal employer. *See Holloway I*, 552 A.2d at 1317 (the legally protectable interest is "to protect the employer's business by restraining those former employees whose duties involved 'the creation of the good will of customers and clients which [clients] are likely to follow the person of the former employee'") (quoting *Silver v. Goldberger*, 188 A.2d 155 (1963)). If Ms. Bloshuk had no contact or communication with the potential customers, it is not possible for her to create

---

[3] Seneca One attached letters from its General Counsel, Rod Boddie, to Ms. Bloshuk and Senior Counsel at DRB Capital, in which Boddie states that Ms. Bloshuk worked with one of these annuitants, Anna Donahue, while employed at Seneca One. *See* ECF No. 2-3, 2-4. There is no mention of Theresa Serna in these letters.

goodwill with them on Seneca One's behalf. The non-solicit provision is therefore facially overbroad and cannot be enforced.

## II. Accounting and Civil Conspiracy

An accounting is generally a remedy rather than an independent cause of action. *1899 Holdings, LLC v. 1899 Ltd. Liability Co.*, Civ. No. CCB-12-297, 2013 WL 142303, at *4 (D. Md. Jan. 8, 2013), *aff'd*, 568 Fed. App'x 219 (4th Cir. 2014). "If the court dismisses all other causes of action upon which a claim for an accounting could depend, then a claim for an accounting should also be dismissed." *Id.* Because the Court concludes that the non-competition and non-solicit provisions of the Contract are unenforceable, Seneca One's accounting claim based on unjust enrichment stemming from her alleged breach of the Contract will also be dismissed.

As Seneca One concedes, Ms. Bloshuk and DRB are not legally capable of conspiring to breach Ms. Bloshuk's contract with, or fiduciary duty to, Seneca One because DRB owes no fiduciary duty to Seneca One and Ms. Bloshuk is not capable of tortiously interfering with her own contract. *See Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 429 (Md. 2009) ("[L]iability for civil conspiracy based on the underlying tort of breach of fiduciary duty (where it is recognized) would require proof that the defendant, although not committing personally the underlying tort, was legally capable of committing the underlying tort"). Moreover, it is well established in Maryland that civil conspiracy will not support a separate cause of action, and it is "'improper pleading to allege. . .conspiracy in [a] separate count[].'" *Woods v. Stewart Title Guar. Co.*, Civ. No. CCB-06-0705, 2006 WL 2135518, at *4 (D. Md. Jul. 28, 2006) (quoting *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 110 n.6 (Md. 2000)). While Seneca One invites this Court to find civil conspiracy to misappropriate trade secrets within the facts of the

Complaint, ECF No. 15-1, at 34, Seneca One did not bring a claim for violation of the Maryland Trade Secrets Act and this Court declines to read this claim into the Complaint.  Accordingly, Counts II and III of the Complaint will be dismissed.

## CONCLUSION

For the foregoing reasons, Seneca One's claims for breach of the non-competition and non-solicitation agreements, accounting, and civil conspiracy shall be dismissed with prejudice, and Ms. Bloshuk's motion [ECF No. 12] shall be granted.  A separate Order follows.


Date: October 5, 2016                              /s/
                                            ROGER W. TITUS
                                    UNITED STATES DISTRICT JUDGE